IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARSHALL WILLIAMS, ) | CASE NO. 1:22-CV-01211-CEF |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | JUDGE CHARLES ESQUE FLEMING |
| vs. ) | UNITED STATES DISTRICT JUDGE |
| ) | |
| WARDEN DOUGLAS FENDER, ) | MAGISTRATE JUDGE |
| ) | JONATHAN D. GREENBERG |
| Defendant. ) | |
| ) | **REPORT & RECOMMENDATION** |
| ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Before the Court is the Petition of Marshall Williams ("Williams" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. (Doc. No. 1) Williams is in the custody of the Lake Erie Correctional Institution pursuant to journal entry of sentence in the case *State v. Williams,* Cuyahoga County Common Pleas Court Case No. 2018 CR 634688-A. For the following reasons, the undersigned recommends that the Petition be **DENIED.**

### I.     Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state appellate court summarized the facts underlying Williams' conviction as follows:

> [*P2] On December 7, 2018, a grand jury returned an eight-count indictment against Mr. Williams and his wife, Shawnte Williams ("Ms. Williams"), for an offense dated November 16, 2018. Mr.

1

Williams was 41 years old at the time of the offense; Ms. Williams was a few days short of 41 years old. The couple lived together and have children and grandchildren.

[*P3] Mr. Williams was charged with the following: trafficking in violation of R.C. 2925.03(A)(2), a first-degree felony (count 1); drug possession in violation of R.C. 2925.11(A), a firstdegree felony (count 2); trafficking in violation of R.C. 2925.03(A)(2), a fifth-degree felony (count 3); drug possession in violation of R.C. 2925.11(A), a fourth-degree felony (count 4); drug possession in violation of R.C. 2925.11(A), a fifth-degree felony (count 5); and possessing criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony (count 6). All six counts included forfeiture specifications.

[*P4] Ms. Williams was indicted on count 6 and two other charges: permitting drug abuse in violation of R.C. 2925.13(A) and (B), fifth-degree felonies (counts 7 and 8). As with the other counts, counts 7 and 8 included forfeiture specifications.

[*P5] On December 27, 2018, Mr. and Ms. Williams initially pled not guilty to the charges. Thereafter, they agreed to a joint plea deal. At the plea hearing on January 23, 2019, Mr. Williams withdrew his not guilty plea and pled guilty to an amended count 1 and the as-indicted count 4. As amended, count 1 included the forfeiture specifications, but the weight of the drug was reduced from "equals or exceeds one hundred grams" to 27-100 grams. As indicted, count 1 carried with it a mandatory 11-year sentence based on the weight of the drugs. As amended, count 1 required a mandatory sentence between 3 to 11 years and a mandatory fine of $10,000, with a discretionary fine up to $20,000. count 4 was a felony-four charge of drug possession in violation of R.C. 2925.11. The state nolled counts 2, 3, 5, and 6 against Mr. Williams.

[*P6] Ms. Williams also entered a guilty plea at the same hearing on January 23, 2019, after previously pleading not guilty on December 27, 2018. She pled guilty to possessing criminal tools in violation of R.C. 2923.24(A) (count 6). The state nolled counts 7and 8.

[*P7] The trial court held a group-plea hearing at which five defendants were present, two of which were Mr. and Ms. Williams. The other three defendants were present for unrelated cases. The trial court instructed the defendants collectively as follows at the plea hearing:

> I'm going to be asking a series of questions. Each defendant must answer in a loud, clear voice. If you do not have a loud, clear voice, you can use the microphone that's in front

of you. If I have to ask you to speak up or to speak more clearly, I'm going to take that as a sign of disrespect to this court, which I will consider at a later time.

[*P8] The court then instructed the defendants to answer in a particular order and further explained:

> The court reporter has to take this down in an organized fashion, and he can only take one voice at a time. So wait for the person before you to finish their answer. I may ask a follow-up question of that person. Wait till we are done until it goes to you, okay?

[*P9] The court instructed Mr. Williams to answer second among the five defendants. Mr. Williams and the other defendants represented that they understood the court's instructions. Later during the plea hearing, the court directed a question to Mr. Williams specifically and he answered. The court then corrected itself and had the defendants answer in the order it originally prescribed:

> COURT: Now, were the forfeitures, pleas also done of your own free will and desire, Mr. Williams?
>
> MR. WILLIAMS: Yes.
>
> COURT: First, Mr. Ogletree?

[*P10] Mr. Ogletree was another defendant in an unrelated case at the plea hearing who was to answer first according to the trial court's initial instructions.

[*P11] On February 27, 2019, a month after the plea hearing, the trial court sentenced Mr. and Ms. Williams. They each addressed the court at the sentencing hearing. Ms. Williams apologized to the court. Mr. Williams stated that he accepted responsibility for his actions, but requested leniency after explaining that he had a difficult childhood and that he was only trying to raise money to pay for surgeries Ms. Williams required in addition to other household and family expenses. He also stated: "I really - - I'm really truly glad, you know, this happened because I was looking for a way out. * * * I just want to be right. I just want to make things right."

[*P12] In response, the trial court reviewed Mr. Williams's record and estimated that he had made at least 700 drug sales to members of his community, noting that he had been selling drugs since as early as 2000. The court further underscored the gravity of Mr.

3

> Williams's actions in the following exchanges:
>
>> COURT: Okay. But you know, you know it's bad enough that you don't give it to your kids.
>>
>> MR. WILLIAMS: Yes, ma'am.
>>
>> COURT: That's a monster in my book, you know? You say I didn't know it was so bad. Of course I wouldn't believe that at this stage. But you got 700 sales, and I really doubt there were only two people buying 700 times.
>> * * *
>> COURT: Sir, do you think it would be okay if I went out and sold drugs to your kids and your family members so that I could buy my kids whatever they want?
>>
>> MR. WILLIAMS: No, ma'am, that is not - -
>>
>> COURT: That is what you did.
>
> [*P13] The court sentenced Mr. Williams to nine years on count 1 and eighteen months on count 4 to be served concurrently. The court also imposed the mandatory minimum fine of $10,000 in connection with count 1 and ordered the forfeiture of two vehicles, two digital scales, eight cell phones, and $14,630. In addition, the court ordered five years of mandatory postrelease control. Ms. Williams was sentenced to five years of probation.
>
> [*P14] The same counsel jointly represented Mr. Williams and Ms. Williams at the plea hearing and at the sentencing. This appeal follows.

*State v. Williams*, 8th Dist. Cuyahoga Nos. 108333. (Doc. No. 6-1, Ex. 15).

## II.     Procedural History

**A.     Trial Court Proceedings**

On December 10, 2018, a Cuyahoga County Grand Jury indicted Williams on one first-degree felony O.R.C. 2925.03(A)(2) Aggravated Drug Trafficking with forfeiture specifications charge, one first-degree felony O.R.C. 2925.11(A) Drug Possession with forfeiture specifications charge, one fifth-degree felony O.R.C. 2925.03(A)(2) Drug Trafficking with forfeiture specifications charge, one fourth-degree felony O.R.C. 2925.11(A) Drug Possession with forfeiture specifications charge, one fifth-

4

degree felony O.R.C. 2925.11(A) Drug Possession with forfeiture specifications charge, one fifth-degree felony O.R.C. 2923.24(A) Possession of Criminal Tools with forfeiture specifications charge, and two fifth-degree felony O.R.C. 2925.13(B) Permitting Drug Abuse Possession with forfeiture specifications charges. (Doc. No. 6-1, Ex. 1) The offenses were prosecuted in Cuyahoga County Common Pleas Court Case No. CR-18-634688-A, *State v. Marshall Williams*. (*Id.*, Ex. 2) Williams had legal representation throughout the trial court proceedings.

Prior to trial, pursuant to a negotiated plea agreement, the State amended the first-degree felony Aggravated Drug Trafficking charge to reflect a lower weight. Williams pled guilty to the amended Aggravated Drug Trafficking with forfeiture specifications charge and one fourth-degree felony Drug Possession with forfeiture specifications charge. (*Id.*, Ex. 3) The trial court engaged in a colloquy with Williams (Doc. No. 6-2, Tr. Vol. 1), accepted Williams guilty pleas, found Williams guilty of the amended Aggravated Drug Trafficking with forfeiture specifications charge and one fourth-degree felony Drug Possession with forfeiture specifications charge, and ordered Williams to forfeit two vehicles, cash, digital scales, and multiple phones. (Doc. No. 6-1, Ex. 3) Pursuant to the plea agreement, the State dismissed the remaining charges. (*Id.*)

Williams filed a sentencing memorandum (*Id.*, Ex. 4), the trial court held a hearing (Doc. No. 6, Tr. Vol. 2), and sentenced Williams to an aggregate 9 years in prison, journalized on February 27, 2019. (Doc. No. 6-1, Ex. 5) On March 25, 2019, the trial court filed an amended sentencing entry (*Id.*, Ex. 6), but the amended sentencing entry did not change Williams' aggregate 9-year prison sentence.

**B.     Direct Appeal**

Williams, through new counsel, filed a timely notice of appeal to the Eighth District Court of Appeals and the state appellate court consolidated Williams' appeals. (Doc. No. 6-1, Ex. 7) In his July 17, 2019, appellate brief, he raised the following assignments of error:

5

> 1. Mr. Marshall Williams was denied due process when the trial court imposed a vindictive sentence that was not supported by the record in violation of R.C. 2929.11, 2929.12, the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution and Article I Section 10 of the Ohio Constitution and Ohio Crim.R. 32.
>
> 2. The trial court erred when it did not determine that the defendant understood the nature of the offenses, the effects of the plea, and that he was waiving certain constitutionally guaranteed trial rights by pleading guilty in violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution and Article I Section 10 of the Ohio Constitution and Ohio Crim.R. 11.
>
> 3 The accused was denied due process and his right to counsel in violation of U.S. Constitution Amendments V, VI, and XIV; and Ohio Constitution Art. I, Section 10.
>
> 4. Mr. Marshall Williams was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I Section 10 of the Ohio Constitution and when his attorney failed to file an indigency affidavit to waive the mandatory fine and when counsel continued to represent codefendants despite a clear conflict.

(*Id.*, Ex. 8) The State filed a brief in response. (*Id.,* Ex. 9) Williams filed a reply brief, and the State filed a notice of supplemental authority (*Id.,* Exs. 10, 11). On April 9, 2020, the appellate court affirmed Williams' convictions and sentences. *State v. Williams*, 8th Dist. Cuyahoga Nos. 108333. (*Id.*, Ex. 12).

On April 20, 2020, through counsel, Williams timely filed a *pro se* Ohio App.R. 26(A) application to reconsider his fourth error assignment regarding ineffective assistance of counsel. (*Id.*, Ex. 13) The state appellate court granted Williams' motion, vacated its prior decision (*Id.*, Ex. 14), and on July 2, 2020, the state appellate court filed a substitute opinion and overruled Williams' original error assignments and dismissed Williams' direct appeal again. *State v. Williams*, 8th Dist. Cuyahoga No. 108333, 2020-Ohio-3588. (*Id.*, Ex. 15)

On May 26, 2020, through counsel, Williams timely appealed the state appellate court's April 9, 2020, decision to the Ohio Supreme Court under Case No. 2020-0651. (*Id.*, Ex. 16) Williams raised the following proposition of law in his jurisdictional memorandum:

>    1.  A trial court has a duty to inquire into the possible conflict of interest created by an attorney's dual or multiple representation of codefendants in a criminal case.

(*Id.*, Ex. 17) The State filed a memorandum in response (*Id.*, Ex. 18), and the Ohio Supreme Court accepted Williams' appeal for review. (*Id.*, Ex. 19) The State filed a motion to dismiss the appeal as being improvidently allowed (*Id.*, Ex. 20), the Ohio Supreme Court denied the motion and consolidated the appeal with Case No. 2020-0991 (*Id.*, Ex. 21), and Williams filed a post judgment response to the State's motion to dismiss. (*Id.*, Ex. 22) Williams and the State each filed merit briefs (*Id.*, Exs. 23, 24) and on September 15, 2021, the Ohio Supreme Court affirmed the state appellate court decision. *State v. Williams*, 166 Ohio St.3d 159, 2021-Ohio-3152, 184 N.E.3d 29. (*Id.*, Exs. 25, 26)

A few months after filing his Ohio Supreme Court appeal of the state appellate court's April 9, 2020 decision, Williams also timely appealed the state appellate court's July 2, 2020 decision to the Ohio Supreme Court under Case No. 2020-0991. (*Id.*, Ex. 27) Williams raised the following proposition of law in his jurisdictional memorandum:

>    1.  A trial court has a duty to inquire into the possible conflict of interest created by an attorney's dual or multiple representation of codefendants in a criminal case.

(*Id.*, Ex. 28)

The Ohio Supreme Court accepted Williams' appeal for review (*Id.*, Ex. 29), consolidated the appeal with Case No. 2020-0991, ordered briefing to proceed under Case No. 2020-0991 (*Id.*, Ex. 30), and on September 15, 2021, the Ohio Supreme Court affirmed the state appellate court decision. *State v. Williams*, 166 Ohio St.3d 159, 2021-Ohio-3152, 184 N.E.3d 29. (*Id.*, Exs. 31, 32) Williams did not

timely file a petition for certiorari in the United States Supreme Court and his filing deadline expired December 14, 2021. See Sup. Ct. R. 13.

C.     **Ohio App.R. 26(B) Application to Reopen Direct Appeal**

On November 1, 2021, Williams filed an untimely *pro se* Ohio App.R. 26(B) application to reopen his direct appeal due to ineffective assistance of appellate counsel and he alleged that his appellate counsel was ineffective for failing to raise this claim on direct appeal:

> 1.     Appellate Counsel was ineffective for failing to argue that the trial court failed to make prompt inquiry into whether a conflict exists any time two or more defendants facing charges arising out of the same matter are represented by the same attorney thus violating his rights as guaranteed by the Sixth Amendment to the United States Constitution; and Article I, Section 10 of the Ohio Constitution.

(Doc. No. 6-1, Ex. 33) The State filed an opposition. (*Id.*, Ex. 34), and on December 20, 2021, the state appellate court determined Williams had not shown good cause to excuse his failure to comply with Ohio App.R. 26(B) filing deadlines, and denied Williams' application because it was untimely. *State v. Williams*, 8th Dist. Cuyahoga No. 108333, 2021-Ohio-4523. (*Id.*, Ex. 35) Williams did not timely appeal the state appellate court decision to the Ohio Supreme Court and his filing deadline expired February 3, 2022. See Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i); Ohio S.Ct.Prac.R. 3.03(A)(1).

D.     **Federal Habeas Petition**

Williams states that he placed his *pro se* Petition for Writ of Habeas Corpus in the prison mailing system on June 28, 2022. *See Houston v. Lack*, 487 U.S. 266, 274 (1988). Williams' Petition was filed in this Court on July 11, 2022, and asserts the following ground for relief:

> **GROUND ONE**: The decision of the state courts holding that where a trial court did not know, and should not reasonably have known, of a possible conflict of interest in Petitioner's two attorneys representation of two or more co-defendants charged with a crime, the trial court had no affirmative duty to inquire whether a conflict of interest exists, is contrary to, or involved an unreasonable application of clearly established

federal law as determined by the Supreme Court of the United States.

(Doc. No. 1 at 6) On August 23, 2022, Warden Douglas Fender ("Respondent") filed his Return of Writ. (Doc. No. 6) Williams filed a Traverse on September 28, 2022. (Doc. No. 8) Respondent filed a Reply to Williams' Traverse on October 5, 2022. (Doc. No. 9) The case is now ripe for review.

### III. Review on the Merits

**A. Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court. *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v.Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612

(2012). *See also Lopez v.Smith*, 574 U.S. 1, 7, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. (2013)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. *See also Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief

10

does not mean the state court's contrary conclusion was unreasonable." *Id*. at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**B.      Merits Review**

In his sole ground for relief, Williams argues that he was denied due process and his right of counsel because the trial court "failed to assure that his counsel explained the very real conflict posed by joint representation." (Doc. No. 1 at 6) Respondent argues that Williams has not rebutted the state's factual findings by clear and convincing evidence. Williams argues that the unrebutted facts demonstrate that "no possible conflict was brought to the trial court's attention, there is nothing in the record to indicate that the trial court should have reasonably known of a possible conflict, and that [petitioner] was given opportunities to address the court and did not say anything that would have reasonably put the court on notice of a possible conflict created by the dual representation." (Doc. No. 6 at 28) Respondent further argues that Williams' ineffective assistance of counsel claim is without merit. (*Id.* at 14)

  1. **Ohio Decision**

In the last reasoned state court decision, the Ohio Supreme Court found:

> [**P6] The fundamental right to counsel includes a "correlative right to representation free from conflicts of interest." *State v. Gillard*, 64 Ohio St.3d 304, 311, 1992- Ohio 48, 595 N.E.2d 878 *(1992)*. "Both defense counsel and the trial court are under an affirmative duty to ensure that a defendant's representation is conflict-free." *State v. Dillon*, 74 Ohio St.3d 166, 167-168, 1995-

11

*Ohio 169, 657 N.E.2d 273 (1995)*. Defense counsel has a duty to provide effective, conflict-free assistance of counsel under the *Sixth Amendment* and its supporting caselaw, *see, e.g., Cuyler v. Sullivan, 446 U.S. 335, 345, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)*, and pursuant to the Ohio Rules of Professional Conduct. A trial court's affirmative duty to inquire into multiple representation of codefendants arises when the trial court knows or has reason to know that a possible conflict of interest exists or

> 3 *Prof.Cond.R. 1.7(c)* prohibits an attorney from representing a client, regardless of the client's informed consent, if the representation is prohibited by law or when the representation would involve the assertion of a claim by one client against another client represented by the attorney in the same proceeding.

when a defendant objects to the multiple representation. *State v. Manross, 40 Ohio St.3d 180, 181-182, 532 N.E.2d 735 (1988)*.

[**P7] This court has explained that when reviewing a case in which a trial court did not inquire into whether an attorney's representation of multiple defendants presented a conflict of interest, courts must apply a two-step approach. *Id. at 181*. First, the reviewing court must determine whether the trial court's duty to inquire arose in the first instance; that is, in the absence of a timely objection, whether the trial court knew or reasonably should have known that a possible conflict existed. *Id.*; *see also Gillard at 311-312*; *Cuyler at 346-347*. If the trial court's affirmative duty arose but it did not inquire, the case must be remanded to the trial court with instructions to conduct a hearing to determine whether an actual conflict of interest existed. *Gillard at 311-312*; *see also State v. Johnson, 185 Ohio App.3d 654, 2010-Ohio-315, 925 N.E.2d 199, ¶ 6-8 (3d Dist.)* (remanding for a hearing to determine whether an actual conflict existed when a possible conflict was raised and discussed, but the trial court did not inquire whether an actual conflict existed and did not advise the defendant of his right to conflict-free counsel); *State v. Haugabrook, 8th Dist. Cuyahoga No. 103693, 2016-Ohio-5838, ¶ 17, 21* (vacating a guilty plea when the defendant expressed reservations about dual representation with his wife; trial court erred by not explaining the risks of dual representation and not advising the defendant of his constitutional right to conflict-free representation). In the absence of an objection or circumstances when the trial court should reasonably have known about a possible conflict, the trial court may assume that there is no conflict or that the risk of conflict is known to and accepted by the codefendants. *Cuyler at 346-347*.

[**P8] Second, if the reviewing court determines that the trial

12

court's affirmative duty to inquire into a possible conflict with multiple representation did not arise, the defendant must show that an actual conflict of interest adversely affected his lawyer's performance. *Manross at 182*; *accord Dillon at 169*. An actual conflict of interest exists when " 'the defendants' interests do diverge with respect to a material factual or legal issue.' " *Dillon at 169*, quoting *Cuyler at 356, fn. 3* (Marshall, J., concurring in part and dissenting in part). Raising the *possibility* of a conflict of interest is insufficient. *Manross at 182*; *see also Cleveland v. Harris, 8th Dist. Cuyahoga No. 105545, 2018-Ohio-1522, ¶ 19* (finding no actual conflict when the defendant failed to direct the reviewing court to specific instances in the record demonstrating an actual conflict of interest).

\*\*\*

[\*\*P16] … we turn to the facts of this case to first determine whether the trial court's affirmative duty to inquire into the possibility of a conflict related to the dual representation arose. We agree with the court of appeals that it did not. *2020-Ohio-3588 at ¶ 36*. The transcript is clear that no possible conflict was brought to the trial court's attention. Further, there is nothing in the record to indicate that the trial court should have reasonably known of a possible conflict. Marshall was given opportunities to address the court and did not say anything that would have reasonably put the court on notice of a possible conflict created by the dual representation. *State v. Ingol, 89 Ohio App.3d 45, 49, 623 N.E.2d 598 (9th Dist. 1993)* (absent an objection or circumstance showing the court should have reasonably known of a possible conflict, a trial court may assume no conflict exists or that the risk is known and accepted); *Haugabrook, 2016-Ohio-5838, at ¶ 17, 21* (vacating appellant's guilty plea after finding that prior to pleading guilty, appellant had expressed reservations to the trial court with the dual representation of him and his wife, claiming that she was innocent and they were both subject to a package plea deal).

[\*\*P17] Here, when the trial court asked Marshall whether he was satisfied with the representation he had received, he replied that he was. And when the trial court asked if there was anything about his case or the proceedings that he did not understand, he said no. Unlike in *Gillard*, in which trial testimony demonstrated the possibility of incompatible interests, there is nothing in the record before us indicating that the trial court should have been aware of the possibility of a conflict. Accordingly, we find that the trial court did not have an affirmative duty to inquire into a possible conflict with the dual representation of Marshall and his wife.

13

[**P18] Having found that the trial court had no affirmative duty to inquire into the possibility of a conflict of interest, we now examine whether an actual conflict existed—that is, whether Marshall's interests diverged from his wife's interests with respect to a material legal or factual issue. *Dillon, 74 Ohio St.3d at 169, 657 N.E.2d 273*. We find no indication that their interests diverged, and Marshall has not directed us to any instance in his case when his defense diverged from his wife's defense on a material legal or factual issue. *State v. Smith, 3d Dist. Hancock No. 5-11-10, 2012-Ohio-5020, ¶ 29-31* (finding an actual conflict based on the divergence of interests when it appeared that one client's best interest was to seriously consider a plea in exchange for her testimony against her codefendant). When Marshall and his wife addressed the court at the sentencing hearing, his wife offered an apology for her poor decisions and expressed her intent to focus on her health and her family. Marshall took responsibility for his actions and explained that drugs and the sale of drugs had ravaged his life and the lives of other family members for decades and that he was looking for a way out. He also explained that he had sold drugs because he was trying to raise money to pay for surgery that his wife needed. He requested that the court be as lenient as possible so that he could get home to his wife and his grandchildren and so that he could demonstrate to the court that he is a positive and productive citizen.

[**P19] The statements made by Marshall do not diverge from his wife's statements, and he did not assign blame to her or indicate that he was bearing criminal culpability that properly belonged to her. Marshall argues that his interests *could* have diverged from those of his wife, but absent a showing that the trial court had the affirmative duty to inquire, asserting the *possibility* of a conflict of interest is insufficient to establish "the constitutional predicate for [a] claim of ineffective assistance of counsel." *Manross, 40 Ohio St.3d at 182, 532 N.E.2d 735*. Further, the fact that his wife was charged with fewer offenses than Marshall was charged with does not establish an actual conflict, *id. at 183*; nor does the fact that she received a more advantageous plea offer, *State v. Ermekeil, 8th Dist. Cuyahoga Nos. 63703 and 63704, 1993 Ohio App. LEXIS 4433, 1993 WL 367082, *13 (Sept. 16, 1993)*.

[**P20] The rights Marshall is seeking to protect are his *Sixth Amendment* right to conflict-free counsel and his fundamental right to a fair trial. But there is no indication that either of those rights were violated in his case. Marshall argues that nothing in the record establishes that he knowingly waived any potential conflict

or that counsel explained the potential conflict. Marshall stops short, however, of asserting that defense counsel actually failed to provide him with this explanation. Further, Marshall does not put forth an alternative defense or strategy that was not undertaken because of the dual representation. *See State v. West*, 2018-Ohio-640, 106 N.E.3d 96, ¶ 26 (12th Dist.) (finding that in order to demonstrate an actual conflict of interest, a defendant must put forth a viable alternative defense that was not undertaken due to the attorney's divided loyalties). We agree with the court of appeals that the record in this case does not reveal a violation of Marshall's right to conflict-free representation. *2020-Ohio-3588 at ¶ 41*. Furthermore, we find no violation of Marshall's fundamental right to a fair trial.

[**P21] Finally, Marshall asks us to hold that judicial inquiry into a potential conflict of interest is required whenever a trial court is aware that two or more criminal codefendants are being represented by the same attorney. He argues that this is a safer, more transparent, and more just rule. Further, Marshall asserts in his merit brief that judicial advisement regarding an attorney's potential conflict of interest in a case involving multiple representation is an "unmitigated good," because what the court loses in a small amount of time it will "regain tenfold in both the appearance and *fact* of fairness, transparency, and professionalism." (Emphasis sic.) Marshall also calls our attention to a number of jurisdictions that require judicial inquiry into multiple representation by rule.4

> 4 *Fed.R.Crim.P. 44(c)(2)* provides, "The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation." *See also* W.Va.R.Crim.P. 44(c); *Mich.Ct.R. 6.005(F)*; *Ky.R.Crim.P. 8.30(1)*.

[**P22] As we observed in *Manross*, we agree that the better practice is for the trial court to make a prompt inquiry and give an advisement in cases involving joint representation of codefendants, even if such an inquiry and advisement is not constitutionally required. *40 Ohio St.3d at 182, 532 N.E.2d 735*. We also recognize that defendants might not know of their right to separate counsel and that there could be instances in which lawyers may take advantage of this ignorance, in spite of their duty to provide effective assistance of counsel that is free from any conflict of interest. But requiring trial courts to promptly inquire about an attorney's potential conflict of interest whenever that attorney represents two or more criminal codefendants should be done by rule or by legislation.

15

> **III. CONCLUSION**
> [**P23] There is nothing in the record of this case giving rise to an affirmative duty of the trial court to inquire about a potential conflict of interest resulting from the dual representation of Marshall and Shawnte Williams. Furthermore, the record does not reveal that any actual conflict of interest existed during trial counsel's representation of the couple. Accordingly, we hold that when a trial court does not know, and should not reasonably have known, of a possible conflict of interest in an attorney's representation of two or more codefendants charged with a crime, the trial court has no affirmative duty to inquire whether a conflict of interest exists. We affirm the judgment of the Eighth District Court of Appeals.

*State v. Williams*, 166 Ohio St.3d 159, 2021-Ohio-3152, 184 N.E.3d 29. (Doc. No. 6-1, Ex. 31)

2. **Law & Analysis**

Williams argues that the Ohio Supreme Court's determination that "the trial court had no affirmative duty to inquire whether a conflict of interests exists, is contrary to or involved an unreasonable application of clearly established federal law." (Doc. No. 1 at 6). In support, Williams largely relies on the United State Supreme Court's decision in *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), as well as Justice Bruner's dissent in Williams' Ohio Supreme Court case. For the reasons that follow, Williams' arguments are not well taken.

In *Mickens v. Taylor*, the U.S. Supreme Court addressed the issue of ineffective assistance counsel claim involving dual representation in a habeas case. The Supreme Court explained the law as follows:

> A defendant alleging ineffective assistance generally must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. An exception to this general rule presumes a probable effect upon the outcome where assistance of counsel has been denied entirely or during a critical stage of the proceeding. The Court has held in several cases that "circumstances of that magnitude," *United States v. Cronic,* 466 U.S. 648, 659, n. 26, 104 S.Ct. 2039, 80 L.Ed.2d 657, may also arise when the defendant's attorney actively represented conflicting interests. In *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426, the Court created an automatic reversal rule where counsel is forced to represent

16

> codefendants over his timely objection, unless the trial court has determined that there is no conflict. In **1239 *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333, *163 the Court declined to extend *Holloway* and held that, absent objection, a defendant must demonstrate that a conflict of interest actually affected the adequacy of his representation, 446 U.S., at 348–349, 100 S.Ct. 1708.

*Mickens v. Taylor*, 535 U.S. 162, 162–63, 122 S. Ct. 1237, 1238–39, 152 L. Ed. 2d 291 (2002). Further, in *Cuyler*, the Court also held that "[a]bsent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist" and "[u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." 446 U.S. at 346.

Here, the state court applied the appropriate standard and analyzed Williams' appeal under a two-step approach. First, the state court determined whether, in absence of a timely objection, the trial court had an affirmative duty to inquire into any possible conflicts in the dual representation of Williams and his wife—that, the trial court "knew or reasonably should have known that a possible conflict existed." (Doc. No. 6-1, Ex. 31, ¶7). Applying the facts, the court found that the trial court had no affirmative duty. Williams never objected to joint representation with his wife and his counsel never raised an issue concerning a conflict or potential conflict of interest.[1] (*Id.* ¶ 16) ("The transcript is clear that no possible conflict was brought to the trial court's attention. Further, there is nothing in the record to indicate that the trial court should have reasonably known of a possible conflict.") In addition, Williams stated to the trial court that he was satisfied with his representation and when asked if there was anything about his case or the proceedings that he did not understand, he said no. (*Id.* ¶17)

Having found that the trial court had no affirmative duty to inquire into a possible conflict in dual representation, the state court then analyzed whether an actual conflict existed—that is, whether Williams interests materially diverged from his wife's interests in fact or law. (*Id.* ¶8) The court found

---

[1] *Holloway* does not apply as Williams suggests because counsel was not "forced to represent codefendants over his timely objection." 435 U.S. 475.

17

that Williams had not argued an actual conflict existed and determined that there was "no indication" the Williams interests diverged from the interest of his wife. (*Id.* ¶ 18) In fact, the court noted that Marshall and his wife's sentencing statements were congruent. They each took responsibility for their actions and expressed their intent to focus on their families. (*Id.*) Williams "did not assign blame to [his wife] or indicate that he was bearing criminal culpability that properly belonged to her." (*Id.* ¶19) The court further noted that Williams did not put forth an "alternative defense or strategy that was undertaken." (*Id.*, ¶20) Accordingly, the state court found Williams had not shown an actual conflict. The Ohio Supreme Court's determination was not unreasonable.

In addition to U.S. Supreme Court precedent, Williams relies on Justice Brunner's dissent in his state court case to support his petition. (Doc. No. 8 at 2-9) However, Justice Brunner's dissent does not support granting Williams' petition. Justice Brunner argued that the majority failed to address the Ohio Constitution and only addressed the U.S. Constitution:

> The right to counsel is not protected solely by the Sixth Amendment to the United States Constitution. Article I, Section 10 of the Ohio Constitution also guarantees the right to counsel, providing that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." The majority decides this case solely on the Sixth Amendment, making no mention of Article I, Section 10 of the Ohio Constitution, even though defendant-appellant, Marshall Williams, made clear that he sought to invoke that right in his briefs to the court of appeals and to this court.
>
> I believe that the majority opinion's analysis is incomplete. I would address the right to counsel in Article I, Section 10 of the Ohio Constitution and hold that it requires a trial court to make a prompt inquiry into whether a conflict exists any time two or more defendants facing charges arising out of the same matter are represented by the same attorney. Because the trial court in this matter did not conduct such an inquiry, I would remand this matter to the trial court for it to determine whether an actual conflict existed. Further, because the majority opinion indicates that inquiries into multiple representation should be addressed by a rule or a statute, I note several specific matters any such rule or statute must address to sufficiently protect the right to counsel.

(*Id.*, ¶¶24-25) Justice Brunner admitted that the majority was correct in its interpretation of the U.S. Constitution and the U.S. Constitution did not offer the relief Williams sought:

18

> The Sixth Amendment body of law relied on by the majority opinion has **39 been well established for over 40 years. The Sixth Amendment guarantees a criminal defendant the right "to have the Assistance of Counsel for his defence," which includes the right to counsel free from conflicts arising from counsel's representation of multiple individuals in the same matter, Holloway v. Arkansas, 435 U.S. 475, 489-490, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). That right, however, requires a trial court to initiate an inquiry into the propriety of multiple representation only when the court "knows or reasonably should know that a particular conflict exists." Cuyler v. Sullivan, 446 U.S. 335, 346-347, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). If the trial court did not know and should not reasonably have known that a conflict existed, then "a defendant who raised no *169 objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance" in order to establish a Sixth Amendment violation. Id. at 347-348, 100 S.Ct. 1708.

(*Id.*, ¶26) Justice Brunner then went on to point out some of the difference in the Ohio and U.S. Constitution's and argued that the Ohio Constitution granted broader rights to defendants in joint representation cases:

> When considering how Article I, Section 10 may differ from the Sixth Amendment, we have stated that we look for "compelling reasons why Ohio constitutional law should differ from the federal law on [the] issue." *State v. Wogenstahl*, 75 Ohio St.3d 344, 363, 662 N.E.2d 311 (1996). And we have found that the right to counsel under the Ohio Constitution is broader than its federal counterpart in at least one case. See State v. Bode, 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 23-27 (holding that the right to counsel in the Ohio Constitution provides greater protection than the right to counsel protected by the Due Process Clause of the Fourteenth Amendment with respect to certain juvenile-delinquency adjudications). In my view, Williams has identified compelling reasons why the right to counsel under Article I, Section 10 provides greater protection than the Sixth Amendment in this case. Thus, I would hold that Article I, Section 10 requires a trial court to inquire into the propriety of multiple representation when an attorney represents two or more individuals charged with related crimes.

(*Id.*, ¶30). Accordingly, Justice Brunner's dissent does not support Williams' argument. Even if it did, it does constitute clearly established federal law.

Finally, Williams does not establish ineffective assistance of counsel because *Strickland* requires a habeas petitioner must (1) show counsel's performance was so far below acceptable standards of representation and that counsel committed such serious error that counsel was not functioning as the "counsel" as guaranteed by the Sixth Amendment and (2) that counsel's deficient performance prejudiced the defense to such an extent that it rendered the proceeding fundamentally unfair. *Strickland*

*v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Here, Williams cannot meet either prong of the *Strickland* standard. Williams has not alleged that his trial counsel committed a specific error. His primarily argument is that the trial court should have an affirmative duty to inquire into conflicts of interests in all cases of dual representation. (Doc. No. 8 at 9) Thus, he has not met his burden. Even if Williams made a more clear *Strickland* argument, his petition would be denied because the facts do not show that there is a reasonable probability that the results of the proceedings would have been different, but for counsel's dual representation.

Based on the above, the Ohio Supreme Court's determination on joint representation as not contrary to or an unreasonable application of clearly established Federal law and did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

### IV. Conclusion

For all the reasons set forth above, it is recommended that the Petition be **DENIED.**


Date: October 31, 2023                             *s/ Jonathan Greenberg*
                                                                  Jonathan D. Greenberg
                                                               United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**